**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | |
|---|---|
| CARA MCMILLAN,<br><br>        Plaintiff,<br><br>        v.<br><br>JEFFERSON DEVELOPMENT CORPORATION and JL GOLF MANAGEMENT, LLC, collectively d/b/a JEFFERSON LANDING GOLF RESORT and CONFERENCE CENTER and JAMES R. VANNOY & SONS CONSTRUCTION COMPANY, INC.,<br><br>        Defendants. | <u>**Civil Action No. 5:25-cv-00099**</u> |

<u>**COMPLAINT (Jury Trial Demanded)**</u>

Plaintiff Cara McMillan ("Plaintiff" or "Ms. McMillan"), by her attorneys, brings this action against Defendants JEFFERSON DEVELOPMENT CORPORATION and JL GOLF MANAGEMENT, LLC, who collectively d/b/a JEFFERSON LANDING GOLF RESORT and CONFERENCE CENTER ("Jefferson Landing") and JAMES R. VANNOY & SONS CONSTRUCTION COMPANY, INC ("Vannoy & Sons") (collectively, "Defendants"), alleging as follows:

## NATURE OF CLAIMS

1.      In March 2023, Cara McMillan, a petite talented 24-year-old line cook, began work at Jefferson Landing, an upscale gated resort community. She eagerly took the position to pursue her dream of a culinary career.

2.      Her supervisor was a 49-year-old man who identified himself as "Bo Humphries"— though this was not his real name. Unbeknownst to Ms. McMillan, her supervisor's actual name was Jerome Bell, and he had a violent history.

3.      Jefferson Landing hired Bell without conducting any background checks even after Bell made the unusual request to his prospective employer that no such screening be performed with respect to his application.

4.      Jefferson Landing failed to inform Ms. McMillan about Bell's dangerous past as well as reports that he had been "play choking" female employees while they worked. Within days of Ms. McMillan's arrival, Bell began his campaign of sexual harassment against her including asking her to pet "his snake" while looking at his genitals and telling her he wanted to have sex with her.

5.      On March 25, 2023, at a work-related gathering at Bell's company-provided residence on Jefferson Landing premises, Bell methodically incapacitated Ms. McMillan with alcohol before brutishly sexually assaulting her. Ms. McMillan immediately reported the attack, and Bell was arrested for forcible rape.

6.      While Ms. McMillan sought assurances from Jefferson Landing that the workplace would be free of sexual harassment and sexual assault by taking measures such as conducting background checks on employees, the company terminated her employment.

7.    Jefferson Landing's multiple failures as an employer transformed what should have been a promising culinary career into a nightmare of trauma and lost opportunity.

8.    Plaintiff Ms. McMillan brings claims under Title VII of the Civil Rights Act of 1964 for sex discrimination in the form of hostile work environment and retaliation. Plaintiff Ms. McMillan also brings claims under North Carolina law for negligent hiring, supervision and retention and wrongful discharge in violation of public policy. Plaintiff seeks back pay, future pay, compensatory damages, punitive damages, attorneys' fees, and costs to remedy Defendants' violations.

## **PARTIES**

9.    Plaintiff Cara McMillan is a North Carolina citizen who maintains a permanent residence and domicile in Wilkes County, North Carolina.

10.    Upon information and belief, Defendants JEFFERSON DEVELOPMENT CORPORATION and JL GOLF MANAGEMENT, LLC, who collectively d/b/a JEFFERSON LANDING GOLF RESORT and CONFERENCE CENTER ("Jefferson Landing") is a recreational resort company offering golf, dining, and other recreational activities to its members and guests. Upon information and belief, Defendant Jefferson Landing is a North Carolina corporation with its principal places of business in Jefferson, Ashe County, North Carolina.

11.    Defendant JAMES R. VANNOY & SONS CONSTRUCTION COMPANY, INC ("Vannoy & Sons") is a multi-state construction company and owner of a townhome on the 11th Fairway at Jefferson Landing, 616 West Jefferson Landing Drive, Jefferson, North Carolina. Upon information and belief, Defendant Vannoy & Sons is a limited liability company, with its principal places of business in Jefferson, Ashe County, North Carolina.

12.     At all times relevant hereto, Defendant Jefferson Landing and Defendant Vannoy & Sons employed more than fifteen (15) employees.

13.     At all times relevant hereto, Defendant Jefferson Landing and Defendant Vannoy & Sons were joint employers because both entities exercised a significant degree of control over employees and governed the terms and conditions of employment, including but not limited to the hiring, supervision, retention, and firing of employees. The two entities also comingled operational employees, including but not limited to sharing the same Human Resources Director.

## JURISDICTION AND VENUE

14.     This Court possesses subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this is a civil case in which Ms. McMillan's claims arise under the laws of the United States.

15.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

16.     Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b) because both Plaintiff and Defendants reside or maintain their principal place of business in this judicial district and all of the acts and omissions complained of occurred within this district.

17.     The Western District of North Carolina has personal jurisdiction over Defendants because the acts complained of and giving rise to the claims alleged herein occurred in this District.

18.     Plaintiff McMillan has satisfied all administrative prerequisites for her Title VII claims, having filed a Charge of Discrimination, Charge No. 435-2024-00078, with the Equal

Employment Opportunity Commission ("EEOC") against Defendant Jefferson Landing on October 21, 2023.

19.    This action is being commenced within 90 days of receipt of the Notice of Right to Sue, attached hereto as **Exhibit A**.

## FACTUAL ALLEGATIONS

**A. Jerome Bell's Hiring, Supervision and Retention at Jefferson Landing.**

20.    Upon information and belief, Amanda Gambill, Director of Membership, Event Planning, & Lodging, interviewed Bell for the Sous Chef position. Bell agreed to take the position only on the condition that Jefferson Landing would not conduct a background check on him.

21.    Upon information and belief, Jefferson Landing failed to conduct background checks on its employees, including Jerome Bell. Defendant Jefferson Landing hired Bell despite his explicit request that no background check be performed on him, which should have put Jefferson Landing on notice that Bell likely had a problematic background that would be revealed by such screening.

22.    Upon information and belief, Bell began employment with Defendant Jefferson on February 9, 2023.

23.    During his employment with Defendant Jefferson Landing, Bell resided in a condominium on the golf course of the Jefferson Landing property. Upon information and belief, Defendants provided condominiums as part of their compensation package to the Clubhouse chefs; Chef Smith, Sous Chef Bell and Pastry Chef Maria Bryant. Upon information and belief, the condominiums were owned by Defendant Vannoy & Sons.

24.    Upon information and belief, Bell has a criminal conviction for assault.

25.     Upon information and belief, prior to the assault on Plaintiff, Defendant Jefferson Landing had received complaints from female staff regarding Bell's offensive behavior, including complaints that he would "play choke" female staff as they worked.

26.     Despite these complaints, Defendant Jefferson Landing failed to take any remedial action to address its female employee's complaints of Bell's workplace misconduct before Bell assaulted Ms. McMillan.

## B.  Plaintiff's Employment with Jefferson Landing and General Workplace Structure

27.     On or about March 1, 2023, Plaintiff McMillan interviewed for a Line Cook position for the Clubhouse, a restaurant on Jefferson Landing's premises. Ms. McMillan was interviewed by Head Chef Gary Smith and Sous Chef Jerome Bell. During the interview, Chef Smith told Ms. McMillan that she would report directly to Chef Bell.

28.     On or about March 3, 2023, Defendant Jefferson Landing hired Plaintiff as a Line Cook at the Clubhouse restaurant. Plaintiff's job responsibilities included prepping menu items, cleaning equipment, and assembling dishes as directed by Head Chef Smith and Sous Chef Bell. Ms. McMillan was a part-time hourly employee who typically worked approximately twenty-six (26) hours per week

29.     Jefferson Landing had no Human Resources department for employees to report workplace misconduct or other workplace issues. Chefs Smith and Bell were the employees with the apparent authority to manage Clubhouse restaurant staff and any Clubhouse workplace issues.

30.     Defendant Jefferson Landing did not provide Ms. McMillan with an employee handbook. Upon information and belief, Defendant Jefferson Landing did not draft, use or distribute any written employment policies to its staff.

31.     Ms. McMillan did not receive any training on reporting sexual harassment, discrimination, or retaliation in the workplace. Neither Head Chef Smith nor Sous Chef Bell gave Ms. McMillan formal or structured training about workplace policies or practices.

32.     Chef Bell served as McMillan's direct supervisor and had authority over her work assignments, schedule, and employment conditions. For example, Chef Bell had the ability to send line cooks home from the shift without any additional approval or authority. As a result, Chef Bell possessed the authority to determine Ms. McMillan's weekly and monthly income.

33.     Ms. McMillan never received any write-ups, reprimands, or discipline while working for Defendant Jefferson Landing. Furthermore, she consistently performed her job duties in a satisfactory manner.

**C.  Bell Sexually Harassed Plaintiff at Work.**

34.     Ms. McMillan was physically intimidated by Chef Bell due to the extreme size difference between them, his aggressive sexual comments to her and his frequent comments that he carried and used firearms.

35.     Chef Bell made unwelcome and unsolicited offensive sexual remarks to Ms. McMillan which include the following instances:

    a.  Within the first few weeks of her employment, during a break with Chefs Smith and Bell, Chef Bell discussed his "pet snake" and invited Ms. McMillan to "pet it," making a sexual innuendo in reference to his penis. Chef Smith did not take any action to address Chef Bell's offensive sexual comments.

    b.  Chef Bell informed Ms. McMillan that several employees at the restaurant wanted to have sex with her and that he was "the 7th."

36.     When Ms. McMillan complained about Chef Bell's offensive sexual comments to a female kitchen worker, Lisa Proctor, Ms. Proctor was not surprised. Ms. Proctor informed Plaintiff that Chef Bell was known to make sexual comments to female employees, but that management did not take any action to address it.

37.     Chef Bell's sexual advances toward Ms. McMillan were unwelcomed and unsolicited, causing her extreme anxiety and fear.

**D. Defendant Bell Sexually Assaults Plaintiff.**

38.     Chef Bell and Chef Smith told Ms. McMillan that the staff was remarkably close, "like a family," and implied that Jefferson Landing management encouraged the staff to spend time together.

39.     On March 25, 2023, Chef Bell invited Ms. McMillan to attend a social gathering at Chef Bell's Jefferson Landing residence with coworkers, managers, including his supervisor, Chef Smith and Ms. Gambill as well as Chef Bell's family members. Ms. McMillan believed she would be safe attending the gathering with Chef Bell's boss present as well as his family members.

40.     During the gathering, Chef Bell pressured Ms. McMillan to consume alcohol, specifically shots of liquor.  Because of Ms. McMillan's desire to fit in with company culture and appease her boss, she complied. Bell was drinking alcohol at the gathering as well.

41.     Ms. McMillan does not drink frequently and is of small stature, and she quickly became intoxicated.

42.     Ms. McMillan was disoriented from the alcohol and knew that she should not drive her car home. Chef Bell offered to let her stay in his guest room, and she agreed as she thought she would be safe with others there.  Chef Bell gave her clothes to change into for the night.

43.     As the guests were leaving Chef Bell's residence, Ms. McMillan went to the bathroom and began to change her clothes. Chef Bell came into the bathroom unannounced, picked her up and put her on the bathroom counter. Ms. McMillan objected to his physical contact with her and told him to stop. Chef Bell ignored Ms. McMillan's objection and assaulted her by performing oral sex upon her against her will. Ms. McMillan was afraid and disoriented and did not consent to the sexual contact.

44.     After the bathroom assault, Ms. McMillan asked if she could go to a bedroom to sleep. Chef Bell directed her to a guest room and assured her that it had a lock on the door. Still in shock from the assault and impaired by alcohol, Ms. McMillan agreed to stay rather than attempt to drive. She went to the guest room and tried to secure the door, but discovered the lock required a key. Over the next several hours, while Ms. McMillan attempted to rest, Bell repeatedly tried to enter the bedroom. Ms. McMillan pretended to be on phone calls to deter his advances. Despite her fear and the trauma of the earlier assault, exhaustion and alcohol eventually caused her to fall asleep sometime around 3:00 a.m.

45.     At approximately 4:00 a.m. on March 26, 2023, Ms. McMillan was forced awake to Bell forcefully engaging in vaginal intercourse with her. Bell had pulled her legs off the bed, pulled off her shorts, and had his hands on her back and midsection. Ms. McMillan began sobbing, and Bell stopped his assault and laid on the bed next to her.

46.      Ms. McMillan stayed in bed, frozen with shock and under extreme duress. She felt trapped, fearing that Bell would harm her physically if she called out or threatened to call the police.

47.     Ms. McMillan remained awake, afraid to move or speak, waiting for Bell to fall asleep. After approximately two hours of remaining motionless beside him, at around 6:00 a.m.,

she determined it was safe to quietly escape. She carefully left the bed, gathered her car keys, and drove home, leaving her personal belongings behind in her haste to leave.

48.     Immediately following the assault, Ms. McMillan called a local sexual assault hotline and sat in her car sobbing inconsolably. When she did not receive an answer to her calls to the hotline, she called a friend and confided to him that she had been sexually assaulted.

### E. Reporting of Sexual Assault and Jefferson Landing's Response

48.     On the morning March 26, 2023, Ms. McMillan went to the hospital for a Sexual Assault Evidence Kit and then to the police department to file a report.

49.     On March 29, 2023, after a police investigation, Chef Bell was arrested and charged with Second Degree Forcible Rape (State of North Carolina v. Jerome Bell, File No. 23 CR 269049-040).[1]

50.     DNA evidence collected during the sexual assault examination matched Chef Bell's DNA profile.

51.     On or about March 29, 2023, and before learning of Chef Bell's arrest, Ms. McMillan contacted Jefferson Landing owner Mark Vannoy and informed him that Chef Bell had sexually assaulted her. During the call, Ms. McMillan told Mark Vannoy that she was having severe emotional distress following the sexual assault and that she had concerns regarding the safety of the workplace environment. Ms. McMillan asked Mark Vannoy for assurances that she

---

[1] *See* Ashe County v. Jerome Bell, Case No. 23-CR-269049-040. On March 29, 2023, Defendant-Bell was charged with second degree forcible rape. He had a bail hearing where he was released on a secured bond and expected to be back in court on April 27, 2023, for a probable cause hearing. Simultaneously, Plaintiff brought a civil case against Defendant-Bell, Cara McMillan v. Jerome Bell, Case No. 23-CVD-334 (Ashe County) moving for a No-Contact Order against Defendant-Bell. There was a hearing scheduled on April 17, 2023, where the No-Contact Order for Stalking or Nonconsensual Sexual Conduct was granted.

would be safe from any further sexual assaults and specifically requested Jefferson Landing to conduct background checks on its employees.

52. During the March 29, 2023 call Mark Vannoy refused to provide Ms. McMillan with any information that Jefferson Landing had investigated her complaints or trained their staff on sexual harassment prevention. Furthermore, he specifically refused to perform background checks on remaining workers. Mr. Vannoy also failed to tell Ms. McMillan that they had terminated Bell, leaving her uncertain about her safety if she returned to work.

53. When Plaintiff reasonably declined to return to work under these circumstances, Mark Vannoy stated that if she did not feel safe, she did not have to return, inviting her resignation. Yet, Ms. McMillan affirmed her intention to continue working for Defendant Jefferson Landing once she felt safe and well enough to return.

54. Mark. Vannoy informed Ms. McMillan that Phil Absher would contact her regarding HR-related issues, but otherwise did not provide the contact information for Mr. Absher or Human Resources generally. This was the first time Plaintiff had ever heard of Mr. Absher, or a Human Resources Department associated with Jefferson Landing. Upon information and belief, Absher is the Director of Human Resources for Vannoy & Sons. Yet, this "Director of Human Resources" never contacted Ms. McMillan by himself or through an agent.

55. Although Defendant Jefferson Landing terminated Chef Bell on or about March 26, 2023, they did not take steps to deter, promptly detect and stop other sexual assaults from occurring on their premises.

56. Around this time, Ms. McMillan spoke with Ms. Gambill and disclosed that Chef Bell had assaulted her. Ms. Gambill shared with Ms. McMillan that Chef Bell had made female

employees uncomfortable before the assault, that she was not surprised that Chef Bell attacked her, and that Plaintiff's allegations were "characteristic" of Bell.

57.　　On or about April 6, 2023, Will Vannoy, co-owner of Jefferson Landing, contacted Ms. McMillan to inquire about when she would return to work.

58.　　Ms. McMillan told Will Vannoy that she was not ready to return to work because she was still having mental health issues because of the assault, and that she was seeking counseling. She also relayed that she was scared to return to work as Defendant Jefferson Landing had made no changes to its policies or practices regarding sexual harassment of its employees.

59.　　At no point did the owners and managers at Defendant Jefferson Landing (including Mark Vannoy, Will Vannoy, Mr. Absher or Chef Smith) inform Ms. McMillan of any performance issues.

60.　　At no point did the owners and managers of Defendant Jefferson Landing (including Mark Vannoy, Will Vannoy, Mr. Absher or Chef Smith) inform Ms. McMillan that if she did not report for work on a certain date, that she would be terminated.

61.　　Upon information and belief, there is no Jefferson Landing employment policy written or otherwise communicated to Ms. McMillan about leave of absence from work including for absences related to recovery from crimes, sexual assaults, or mental health conditions.

### F.  Plaintiff's Medical Condition

62.　　As a result of the sexual assault, Ms. McMillan was diagnosed with chronic posttraumatic stress disorder ("PTSD") with dissociative symptoms. Ms. McMillan's prognosis is fair to poor, which means that she will likely need life-long treatment for her PTSD.

### G. Termination

63. On or about April 25, 2023, less than one month after the assault and less than three weeks after Ms. McMillan reported the incident to Defendant Jefferson Landing, Defendants terminated her employment without warning. Defendant Jefferson Landing told her that they could not keep her position open during a busy season.

64. Ms. McMillan did not request that Defendant Jefferson Landing keep her position open for an indefinite period of time. Ms. McMillan requested that Defendant Jefferson Landing provide her assurances that the workplace would be free from sexual harassers and assaulters, which Defendant Jefferson Landing refused to do.

65. Ms. McMillan has suffered and will continue to suffer damages as a direct and proximate result of Defendants' unlawful conduct.

### FIRST CLAIM FOR RELIEF
**(Title VII Sexual Harassment)**
*Against all Defendant Jefferson Landing*

66. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

67. 42 U.S.C. § 2000e-2(a)(1) states in part: It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because such individual's race, color, religion, sex, or national origin.

68. As set forth above, Ms. McMillan experienced unwelcome sexual conduct by her supervisor that was based on her sex, a protected class.

69.     The conduct to which Ms. McMillan was subjected by her supervisor was both objectively and subjectively offensive in that that Chef Bell repeatedly used offensive sexual language to Ms. McMillan, touched her without her consent, and sexually assaulted Ms. McMillan.

70.     The unwelcome sexual conduct Ms. McMillan experienced was so severe and pervasive that it affected the terms, conditions, and privileges of Ms. McMillan's employment.

71.     Defendants knew or should have known about the harassment and failed to take prompt and appropriate action to prevent recurrence.

72.     Defendants' actions and decisions after Ms. McMillan reported the harassment – including terminating Ms. McMillan's employment soon after she reported sexual harassment and assault to Defendants – constituted a tangible employment action.

73.     Defendants acted with malice and/or reckless indifference to Ms. McMillan's rights by allowing Chef Bell, an unfit employee, to intentionally discriminate and sexually harass her.

74.     Ms. McMillan suffered damages as a direct and proximate result of the sexual harassment and Defendants' failures to remediate it or prevent its reoccurrence.

75.     As a result of Defendant's unlawful discriminatory conduct in violation of Title VII, Ms. McMillan has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Ms. McMillan is entitled to an award of monetary damages and other relief.

76.     The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Ms. McMillan is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SECOND CLAIM FOR RELIEF
### (Title VII Retaliation)
*Against all Defendant Jefferson Landing*

77.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

78.     42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

79.     As described herein, Plaintiff engaged in protected activity under Title VII when she reported the sexual harassment and assault by Chef Bell to Jefferson Landing management on March 29, 2023.

80.     Defendants took an adverse employment action against Plaintiff when it terminated her employment on April 24, 2023.

81.     Defendants would not have terminated Plaintiff but for her complaint of discrimination and harassment in violation of Title VII.

82.     A causal connection exists between Plaintiff's protected activity and the adverse employment action, as evidenced by the close temporal proximity between her report of sexual assault and her termination.

83.     Defendants alleged reason for terminating Plaintiff's employment is pretextual.

84.     As a direct, proximate, and foreseeable result of Defendant's conduct, Plaintiff has sustained, among other things, loss of income, loss of earning capacity, pain and suffering, severe and debilitating emotional distress, and psychological injury.

## THIRD CLAIM FOR RELIEF
### (Negligent Hiring, Retention Supervision)
*Against all Defendants*

85.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

86.     Defendants owed Plaintiff and other employees a duty of care to maintain a safe and secure premises and a safe and secure work environment, free from sex discrimination, sexual assault, sexual misconduct, assault, battery and intimidation.

87.     Defendants owed Plaintiff a duty of care to employ, supervise and retain employees in such a manner so that they would be restrained from committing assaults and other tortious acts against Plaintiff.

88.     Defendants breached their duty or care when they hired Bell without conducting a basic background check even though Bell's explicit request that they not conduct such a screening put them on notice that he had a criminal background.

89.     Defendants breached their duty or care when they placed Bell, whom they knew or should have known, had a history of violent acts in authority over female employees in a confined kitchen environment.

90.     Defendants breached their duty of care when as part of his compensation upon hiring, Defendants provided Bell, whom they knew or should have known, had a history of violent acts with a residence on Jefferson Landing property and encouraged other Jefferson Landing employees to attend social events with alcohol on Bell's company provided property.

91.     Defendants failed to reasonably supervise Bell whom they knew or should have known, had a history of violent acts and was sexually harassing female employees some of whom directly reported to him.

92.     Defendants negligently retained Bell while knowing or having reason to know that Bell had a history of violent acts and was sexually harassing female employees some of whom directly reported to him.

93.     The risk of harm to female employees, including Ms. McMillan, was foreseeable, as demonstrated by Bell's history of violent acts, the supervisory authority given to Chef Bell over female employees and the provision of company housing on the resort property, creating additional opportunities for potential misconduct.

94.     Defendants' negligent hiring, supervision and retention of Chef Bell was a direct and proximate cause of Plaintiff's injuries, as it placed a dangerous individual with a history of violent offenses in a position of authority over Plaintiff in confined spaces such as a kitchen and a guest room, leading to her sexual assault.

95.     The connection between Defendants' negligent hiring, supervision and retention and Plaintiff's injuries is further established by Ms. Gambill's post-assault admission that "Mr. Bell had made employees uncomfortable before the assault" and that Plaintiff's allegations against Mr. Bell were "characteristic" of him, demonstrating that his dangerous propensities were consistent with his prior behavior and known to Defendants.

96.     As a direct and proximate result of Defendants' negligent hiring of Chef Bell, Ms. McMillan has suffered severe physical, emotional, and psychological injuries, including PTSD and related damages.

## FOURTH CLAIM FOR RELIEF
### (Wrongful Termination in Violation of Public Policy)
*Against all Defendants*

97.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

98.     North Carolina recognizes a tort for Wrongful Termination in Violation of Public Polic when an employer terminates an employee for reasons that contravene established North Carolina public policy as set forth in the North Carolina Constitution, North Carolina Statutes, and regulations promulgated by State departments or administrative agencies.

99.     It is the public policy of North Carolina, as expressed in N.C. Gen. Stat. 143-422.2(a) (The Equal Employment Practices Act) to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of . . . sex by employers which regularly employ 15 or more employees.

100.     At all times relevant, Defendants regularly employed 15 or more employees.

101.     At all times relevant, Plaintiff performed her duties in a satisfactory manner.

102.     Defendants wrongfully and intentionally terminated Plaintiff in violation of the public policy of the state in that they, through their managers, employees and agents exercised a discriminatory bias against female employees and terminated Plaintiff when she refused to subject herself to continuing discrimination.

103.     Demonstrating their discriminatory gender bias, Defendants knowingly overlooked, dismissed, and minimized female employees' complaints of sexually offensive comments and physical harassment, including "play choking," by a male supervisor, treating these serious safety concerns as insignificant rather than addressing the hostile work environment they created for women.

Case 5:25-cv-00099-KDB-DCK     Document 1     Filed 06/26/25     Page 18 of 21

104.     Further evidencing their discriminatory gender bias and deliberate indifference to female employees' safety, Defendants refused to implement basic safety measures such as conducting background checks on male employees with supervisory authority over women, even after Plaintiff specifically requested such measures to prevent future sexual assaults against female employees in the workplace.

105.     Because of their discriminatory gender bias, Defendants dismissed and minimized the threat of further sexual assaults on its premises after Plaintiff complained of a sexual attack.

106.     Defendants' pattern of gender discrimination is further evidenced by their disparate treatment of Plaintiff compared to how they would have treated a male employee in similar circumstances. Upon information and belief, Defendants would not have terminated a male employee who requested basic workplace safety measures or who refused to work in an environment where he faced ongoing threats of violence.

107.     Because Plaintiff refused to endure a workplace that exposed her to a continuing discrimination and threat of sexual harassment and assault, Defendants terminated her.

108.     The public policy protecting female employees from workplace sexual harassment and retaliation is not merely statutory but reflects fundamental constitutional principles of equal protection and human dignity. This policy is particularly crucial in employment relationships where power imbalances make female employees vulnerable to exploitation and where employers have both the legal duty and practical ability to maintain safe working environments.

109.     As a proximate result of Defendants' violation of the public policy of North Carolina, Plaintiff incurred and suffered substantial damages, including lost income and benefits and other economic losses, mental anguish and emotional distress, loss of quality and enjoyment

of life, and employment reputation, and other losses for which she is entitled to compensatory damages and such other relief as the court shall deem proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in Plaintiff's favor and against Defendants, jointly and severally, and award relief as follows:

1. Award Plaintiff compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on each of the above-stated counts; and

2. Award Plaintiff punitive and/or exemplary damages, in an amount to be determined by a jury, on each of the above-stated counts; and

3. Award Plaintiff appropriate front pay and back pay, including all lost income and benefits of employment both past and future; and

4. Award Plaintiff attorneys' fees and costs of this action; and

5. Award Plaintiff such other and further relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, this 26th day of June 2025.

THE NOBLE LAW FIRM, PLLC.

*/s/ Laura Noble*

Laura L. Noble, Esq.
(N.C. State Bar No. 38691)
Email: lnoble@thenoblelaw.com
Victoria T. Kepes, Esq.
(N.C. State Bar No. 47856)
Email: vkepes@thenoblelaw.com
700 Spring Forest Road, Suite 205
Raleigh, NC 27609
Telephone: (919) 251-6008
Fax: (919) 869-2079
*Attorneys for Plaintiff*